UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JASMINE PAUL SANCHEZ,<br><br>Plaintiff,<br><br>v.<br><br>CHET RIGNEY,<br><br>Defendant. | Case No. 3:22-cv-00109-ART-CLB<br><br>**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE**[1]<br><br>[ECF No. 23] |

This case involves a civil rights action filed by Plaintiff Jasmine Paul Sanchez ("Sanchez") against Defendant Chet Rigney ("Rigney"). Currently pending before the Court is Rigney's motion for summary judgment. (ECF Nos. 23, 25, 27, 33.)[2] On July 6, 2023, the Court gave Sanchez notice of Defendants' motion pursuant to the requirements of *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988), and *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998). (ECF No. 28.) Despite the Court *sua sponte* granting an extension of time, (ECF No. 30), Sanchez has failed to file an opposition to the motion. For the reasons stated below, the Court recommends that Rigney's motion for summary judgment, (ECF No. 23), be granted.

I.  **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Sanchez is an inmate currently in the custody of the Nevada Department of Corrections ("NDOC") and is currently housed at the Ely State Prison ("ESP"). (ECF Nos. 3, 4.) On February 28, 2022, proceeding *pro se*, Sanchez filed an inmate civil rights

---

[1] This Report and Recommendation is made to the Honorable Anne R. Traum, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

[2] ECF No. 25 consists of Sanchez's medical records filed under seal. ECF Nos. 27 and 33 are manually filed DVDs with video of the incident. Because ECF No. 27 was inoperable, the Court ordered Rigney to file a second copy of the video, which is at ECF No. 33. (*See* ECF No. 31.)

complaint pursuant to 42 U.S.C. § 1983, ("Complaint"). (ECF Nos. 1-1, 4.)

Sanchez's complaint alleges the following: Sanchez has been housed in a segregation unit for seven years. (ECF No. 4 at 3.) On November 30, 2021, Sanchez was placed in the shower, forced to undress in front of female staff and a camera while Rigney licked his lips and made sexual comments. (*Id.* at 4.) The event was designed to—and did—make Sanchez feel like a "degenerate." (*Id.*)

Later that same day, while Sanchez was tied down in a restraining chair, Rigney choked him for no reason. (*Id.* at 5.) When Sanchez said that he could not breathe, Rigney told him to "shut up" and continued choking him. (*Id.*) Sanchez told Rigney that he was choking him to death like George Floyd, and then Sanchez blacked out from a lack of air. (*Id.*) While Sanchez was still in full restraints, Sanchez asked Medical to take photos of his bruises. (*Id.* at 6.) Medical refused to document Sanchez's injuries, saying that Sanchez was "OK" and did not need medication for the pain. (*Id.*) Sanchez had not asked for medication, but he did need medication. (*Id.*)

The Complaint was screened in accordance with 28 U.S.C. § 1915A(a). (ECF No. 3.) Based on the allegations, the Court allowed Sanchez to proceed on an Eighth Amendment sexual harassment claim and an Eighth Amendment excessive force claim against Rigney. (*Id.*)

The undisputed facts as presented by Defendants are as follows. Defendant Rigney was employed as a Senior Correctional Officer with the NDOC at the time of the incident in question. (ECF No. 23-5.)

On November 30, 2021, Sanchez propelled urine at a Corrections Officer during the service of the breakfast. (ECF No. 23-2 at 2.) A planned use of force was conducted by the CERT team to respond to the assault. (*Id.* at 3.) The procedure was videotaped. (*Id.*; ECF No. 33 (video of incident).) The team proceeded to Sanchez's unit. (ECF No. 23-2 at 3.) Verbal commands were given to Sanchez, which he complied with, and wrist restraints were applied. (*Id.*) While applying the leg restraints, Sanchez was told several times to remain kneeling because he is an HRP (High Risk Potential for Violence) (*Id.*)

Non-defendant Sergeant Stubbs instructed the escorting officers to use a modified rear wrist lock due to Sanchez's previous non-compliance. (*Id.*) This caused officers to use a minimal amount of hands-on force to get Sanchez to walk. (*Id.*)

Once officers placed Sanchez in the shower, he became non-compliant again. (ECF No. 33 at timestamp 8:43.) He did eventually comply with the required, unclothed, body search. However, Sanchez objected to the presence of a female officer who was videotaping the incident. (*Id.* at timestamp 5:30.) The female officer was substituted out for a male officer, per Sanchez's request. (*Id.*) Following the search, Sanchez was placed in a restraint chair to allow medical to examine him. (ECF No. 23-2 at 3.) According to the unusual occurrence report from medical, no injuries were noted. (ECF No. 25-1 (sealed).) Sanchez was then placed back into his cell. (ECF No. 23-2 at 3.)

Pursuant to NDOC's Administrative Regulation ("AR") 422.04, offenders are subject to "strip visual body cavity" searches for the safety and security of the institution. (ECF No. 23-3 at 4.) AR 422.04.1 provides that strip and visual body cavity searches of inmates will be conducted by staff trained in conducting searches. (*Id.*)

Following the initial removal from his cell, Sanchez broke the fire sprinkler in his cell, requiring the CERT team to remove Sanchez from his cell again and the removal was again videotaped. (ECF No. 33.) Upon removal and placement into the restraint chair, Sanchez accuses an officer, presumably Rigney, of choking him. (*Id.* at timestamp 3:26.) The video shows Defendant Rigney's hands on either side of—rather than around—Sanchez's neck. (*Id.* at timestamp 4:00.) Defendant Rigney asserts that he was controlling Sanchez's head by was using mandibular anatomical pressure points under the jaw to maintain control. (ECF No. 23-5.) The anatomical points were also described in the video. (ECF No. 33 at timestamp 4:50.) Sanchez continued to talk throughout the process and there was no evidence of Sanchez passing out. (*See id.*) Sanchez was again evaluated by medical following the incident. The unusual occurrence report stated Sanchez was alert and able to verbalize his needs and noted only "mild/minimally red abrasions" to neck from "soft straps" and no bleeding or swelling was noted. (ECF No. 25-2 (sealed).)

In support of the motion for summary judgment, Defendant Rigney provided a sworn declaration, (ECF No. 23-5), which states as follows. Sanchez was being investigated for propelling bodily fluids at another corrections officer, without provocation. An unclothed body search is part of the policy and procedure of the NDOC for interdiction of contraband and when moving an inmate into or out of segregation. Sanchez was moved to a shower room to allow as much privacy for the search as possible. A female officer was substituted out as the camera person at Sanchez's request. The unclothed body search was accomplished as designated in the regulations. Rigney did not lick his lips or make any unnecessary comments during the search. Sanchez was being "completely uncooperative during the process." Sanchez requested medical attention and due to his refusal to cooperate, it became necessary to restrain him in a restraint chair. Rigney maintained positive control of Sanchez's head due to Sanchez having previously bitten a staff member while in a restraint chair. Rigney did not use any pressure or force until Sanchez attempted to pull his face from Rigney's hands and tried to bite one of the officers. Rigney used mandibular anatomical pressure point under Sanchez's jaw to maintain control and as soon as Sanchez stopped fighting, the force stopped. Rigney did not choke or impede Sanchez's airways. Sanchez continued yelling throughout the incident and at no time lost consciousness. Rigney never made any statement or threated Sanchez in any way. (ECF No. 23-5.)

On July 5, 2023, Rigney filed the instant motion for summary judgment arguing: (1) Sanchez was treated appropriately and in accordance with the regulations and procedures; (2) Sanchez did not suffer any damage as a result of the alleged treatment; (3) there is no evidence of sexual harassment; and (4) Rigney is entitled to qualified immunity. (ECF No. 23.)

## II.    LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The

substantive law applicable to the claim determines which facts are material. *Coles v. Eagle*, 704 F.3d 624, 628 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). Only disputes over facts that address the main legal question of the suit can preclude summary judgment, and factual disputes that are irrelevant are not material. *Frlekin v. Apple, Inc.*, 979 F.3d 639, 644 (9th Cir. 2020). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Anderson*, 477 U.S. at 248.

The parties subject to a motion for summary judgment must: (1) cite facts from the record, including but not limited to depositions, documents, and declarations, and then (2) "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Documents submitted during summary judgment must be authenticated, and if only personal knowledge authenticates a document (i.e., even a review of the contents of the document would not prove that it is authentic), an affidavit attesting to its authenticity must be attached to the submitted document. *Las Vegas Sands, LLC v. Neheme*, 632 F.3d 526, 532-33 (9th Cir. 2011). Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish the absence or presence of a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute. *Soremekun*, 509 F.3d at 984. "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun*, 509 F.3d at 984. However, if the moving party does not bear the burden of proof at trial, the moving party may meet their initial burden by demonstrating either: (1) there is an absence of evidence to support an essential element of the nonmoving party's claim or claims; or (2) submitting admissible evidence that establishes the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party. *See Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 593-94 (9th Cir. 2018); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d

1099, 1102 (9th Cir. 2000). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014). If the moving party does not meet its burden for summary judgment, the nonmoving party is not required to provide evidentiary materials to oppose the motion, and the court will deny summary judgment. *Celotex*, 477 U.S. at 322-23.

Where the moving party has met its burden, however, the burden shifts to the nonmoving party to establish that a genuine issue of material fact actually exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, (1986). The nonmoving must "go beyond the pleadings" to meet this burden. *Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021) (internal quotation omitted). In other words, the nonmoving party may not simply rely upon the allegations or denials of its pleadings; rather, they must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. *See* Fed. R. Civ. P. 56(c); *Matsushita,* 475 U.S. at 586 n. 11. This burden is "not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence." *Id.* (quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)). The non-moving party "must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Pac. Gulf Shipping Co.*, 992 F.3d at 898 (quoting *Oracle Corp. Sec. Litig.*, 627 F.3d at 387). Mere assertions and "metaphysical doubt as to the material facts" will not defeat a properly supported and meritorious summary judgment motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

When a *pro se* litigant opposes summary judgment, his or her contentions in motions and pleadings may be considered as evidence to meet the non-party's burden to the extent: (1) contents of the document are based on personal knowledge, (2) they set forth facts that would be admissible into evidence, and (3) the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

     Upon the parties meeting their respective burdens for the motion for summary judgment, the court determines whether reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1018 (9th Cir. 2015). The court may consider evidence in the record not cited by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3). Nevertheless, the court will view the cited records before it and will not mine the record for triable issues of fact. *Oracle Corp. Sec. Litig.*, 627 F.3d at 386 (if a nonmoving party does not make nor provide support for a possible objection, the court will likewise not consider it).

## III. DISCUSSION

### A. Sexual Harassment

"The Eighth Amendment prohibits cruel and unusual punishment in penal institutions." *Wood*, 692 F.3d 1041, 1045 (9th Cir. 2012). Whether a specific act constitutes cruel and unusual punishment is measured by "the evolving standards of decency that mark the progress of a maturing society." *Hudson*, 503 U.S. 1, 8 (1992). "Sexual harassment or abuse of an inmate by a corrections officer is a violation of the Eighth Amendment." *Wood*, 692 F.3d at 1046 (citing *Schwenk*, 204 F.3d at 1197). In evaluating an inmate's claim, courts consider whether "the officials act[ed] with a sufficiently culpable state of mind" and if the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation. *Id.* (quoting *Hudson*, 503 U.S. at 8).

     Where there is no legitimate penological purpose for a prison official's conduct, courts presume malicious and sadistic intent. *Id.* at 1050. Sexual contact between an inmate and a prison guard serves no legitimate role and "is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). In sexual contact cases, there is no lasting physical injury requirement because the only requirement is that the officer's actions be offensive to human dignity. *Schwenk*, 204 F.3d at 1196.

But the Eighth Amendment's protections do not generally extend to mere verbal sexual harassment. *See Austin v. Terhune*, 367 F.3d 1167, 1171 (9th Cir. 2004). A "prisoner presents a viable Eighth Amendment claim where he or she proves that a prison staff member, acting under color of law and without legitimate penological justification, touched the prisoner in a sexual manner or otherwise engaged in sexual conduct for the staff member's own sexual gratification, or for the purpose of humiliating, degrading, or demeaning the prisoner." *Bearchild v. Cobban*, 947 F.3d 1130, 1144 (9th Cir. 2020).

Sanchez's sexual harassment claim is premised on allegations that Sanchez was forced to undress in front of female staff and a camera while Rigney licked his lips and made sexual comments. However, there is no evidence to support Sanchez's allegations. The video of the incident shows Sanchez was not touched during the unclothed search, and no sexual comments were made during the search. (ECF No. 33.) Further, the evidence shows that female officer was substituted out and not actually present during the search. (*Id.*; ECF No. 23-5.) Finally, even if Rigney had made sexual comments, verbal insults alone do not rise to the level of an Eighth Amendment violation. *See Austin*, 367 F.3d at 1171-72 ("[W]hether at the hands of fellow inmates or prison guards, the Eighth Amendment's protections do not necessarily extend to mere verbal sexual harassment."); *see also Zavala v. Barknik*, 545 F. Supp. 2d 1051, 1058 (C.D. Cal. 2008) ("It is well settled that verbal harassment of a prisoner, although deplorable, does not violate the Eighth Amendment").

Based on the record before the Court, there is no evidence of sexual harassment. Aside from the bare assertions in Sanchez's complaint, there is no evidence to support his allegations. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (the opposing party may not rest on conclusory allegations or mere assertions). Sanchez's conclusory statements and pleading allegations, which are uncorroborated by the evidence before the Court, are insufficient to establish the presence of a genuine dispute. *Soremekun*, 509 F.3d at 984. Accordingly, the Court recommends Defendants' motion for summary judgment be granted as to the sexual harassment claim.

B.   **Excessive Force**

The Eighth Amendment's proscription on cruel and unusual punishment forbids prison officials from inflicting "the unnecessary and wanton infliction of pain . . .." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Encompassed within the Eighth Amendment is a bar on the use of excessive force against prisoners. *See Hudson v. McMillian*, 503 U.S. 1, 7-10 (1992). Courts in the Ninth Circuit apply a five-part balancing test to excessive force claims: (1) the extent of the inmate's injuries; (2) the need for application of force; (3) the relationship between the need and amount of force; (4) the threat reasonably perceived by prison officials; and (5) any efforts that officials utilized to "'temper the severity of a forceful response.'" *Id*. at 7 (quoting *Whitley*, 475 U.S. at 321); *see also Wilkins v. Gaddy*, 559 U.S. 34, 36-38 (2010); *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003).

The inmate must demonstrate that officials acted maliciously and sadistically to prevail. "[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. As the Ninth Circuit has explained,

> [t]he "malicious and sadistic" standard arose out of "the need to maintain or restore discipline" inside the prison. When a prison disturbance occurs, prison officials must make "decisions 'in haste, under pressure, and frequently without the luxury of a second chance.'" In these situations, prison officials are "accorded wide-ranging deference" and therefore, prisoners alleging excessive force must show that the force was applied "maliciously and sadistically to cause harm."

*Wood v. Beauclair*, 692 F.3d 1041, 1049-50 (9th Cir. 2012) (quoting *Hudson,* 503 U.S. at 6 and *Whitley,* 475 U.S. at 320). Thus, the Court must be careful when reviewing the factors to verify indicia of "such wantonness with respect to the unjustified infliction of harm as [is] tantamount to a knowing willingness that it occur." *Hudson*, 503 U.S. at 9. Moreover, there is no need for a showing of serious injury as a result of the force, but the lack of such injury is relevant to the inquiry. *See id.* at 7-9; *Martinez*, 323 F.3d at 1184; *Schwenk v. Hartford*, 204 F.3d 1187, 1196 (9th Cir. 2000).

Excessive force cases "nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom," and for this reason, the Ninth Circuit has "held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002); *see also Lolli v. Cnty. of Orange*, 351 F.3d 410, 415–16 (9th Cir. 2003); *Liston v. Cnty. of Riverside*, 120 F.3d 965, 976 n. 10 (9th Cir. 1997) (citing cases).

In the motion for summary judgment, Defendants contend reasonable force was used under the circumstances. (ECF No. 23.) As discussed above, the undisputed facts, uncontradicted by Sanchez, are as follows. On November 30, 2021, after already having been removed from his cell earlier in the day, Sanchez broke the fire sprinkler in his cell, requiring the CERT team to again remove Sanchez from his cell. (ECF No. 33.) Upon removal and placement into the restraint chair, Sanchez accused Rigney of choking him. (*Id.* at timestamp 3:26.) The video shows Defendant Rigney's hands on either side of— rather than around—Sanchez's neck. (*Id.* at timestamp 4:00.) Defendant Rigney asserts that he was controlling Sanchez's head by was using mandibular anatomical pressure points under the jaw to maintain control. (ECF No. 23-5.) The anatomical points were also described in the video. (ECF No. 33 at timestamp 4:50.) Sanchez continued to talk throughout the process and there was no evidence of Sanchez passing out. (*See id.*) Sanchez was again evaluated by medical following the incident. The unusual occurrence report stated Sanchez was alert and able to verbalize his needs and noted only "mild/minimally red abrasions" to neck from "soft straps" and no bleeding or swelling was noted. (ECF No. 25-2 (sealed).)

Here, based on the undisputed evidence, the majority of the *Hudson* factors objectively weigh against finding an Eighth Amendment violation. *See Hudson*, 503 U.S. at 6-7. First, using force generally was necessary. Sanchez needed to be removed from his cell after he broke the fire sprinkler in his cell, causing it to flood. Sanchez then refused to kneel and was uncooperative when he was being removed from his cell.

Second, the amount of force used was proportional to the need. Rigney used minimal force to hold Sanchez's held still as he was being restrained due to Rigney's assertion that Sanchez had previously bit Corrections Officers. There is no evidence that Rigney used other, greater force to accomplish this. Further, Rigney stopped using force as soon as Sanchez was restrained. Thus, the force used was objectively minimal and proportional to the need to gain control of Sanchez. Third, the injuries reported were minimal, if not de minimis. Medical reported Sanchez suffered only "mild/minimally red abrasions" to neck from "soft straps" and no bleeding or swelling was noted. There is no evidence that Sanchez was choked or passed out, as Sanchez continued talking throughout the process. Thus, both the force used, and Sanchez's injuries were insignificant here.

Next, the threat Rigney reasonably perceived was significant. Sanchez is an HRP inmate and Rigney reported he had previously bit Corrections Officers, Thus, when Sanchez was resisting being restrained, a reasonable officer would have felt threatened. Finally, Rigney made efforts to temper the severity of his use of force. However, officers are sometimes required to use force if an inmate refuses a valid order. *Whitley*, 475 U.S. at 320. Rigney had already instructed Sanchez to not resist and pull his head forward, and only resorted to holding Sanchez's head when Sanchez resisted efforts to be restrained.

Based on the evidence before the Court, all five of the relevant *Hudson* factors weigh in favor of finding that Rigney did not use excessive force. There is no dispute as to the minimal amount of force used, the circumstances under which it was applied, and the minimal injuries to Sanchez as a result of the minimal force. As such, there is no genuine issue of material fact as to the merits of the excessive force claim. Sanchez does not, and cannot, show that Rigney applied force maliciously and sadistically to cause harm rather than in a good-faith effort to maintain or restore discipline. *See Hudson*, 503 U.S. at 6. To the contrary, Rigney applied a minimal amount of force necessary in a good-faith effort to maintain order, and it was not done maliciously or sadistically to cause harm.

Accordingly, the Court recommends Defendants' motion for summary judgment be granted as to the excessive force claim.[3]

## IV. CONCLUSION

For good cause appearing and for the reasons stated above, the Court recommends that Rigney's motion for summary judgment, (ECF No. 23), be grant.

The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V. RECOMMENDATION

**IT IS RECOMMENDED** that Rigney's motion for summary judgment, (ECF No. 23), be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that the Clerk of Court **ENTER JUDGMENT** accordingly and **CLOSE** this case.

**DATED**: September 6, 2023.

_____
**UNITED STATES MAGISTRATE JUDGE**

---

[3] Because the Court recommends that the motion for summary judgment be granted in its entirety based on a finding that no constitutional violations occurred, it need not address the argument regarding qualified immunity.